**IN THE COURT OF APPEALS OF IOWA**

No. 14-0967
Filed September 17, 2014

**IN THE INTEREST OF J.T.,**
    **Minor Child,**

**L.T., Mother,**
    Appellant,

**L.B., Father,**
    Appellant.

_____

Appeal from the Iowa District Court for Muscatine County, Gary P. Strausser, District Associate Judge.

A mother and father separately appeal the termination of their parental rights. **AFFIRMED ON BOTH APPEALS.**

Clayton E. Grueb, Davenport, for appellant-mother.

Leah D. Patton of Muscatine Legal Services, Muscatine, for appellant-father.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, Alan Ostergren, County Attorney, and Kevin McKeever, Assistant County Attorney, for appellee.

Sara Strain Linder of Tindal Law Office, P.L.C., Washington, attorney and guardian ad litem for minor child.

Considered by Danilson, C.J., and Vogel and Bower, JJ.

**BOWER, J.**

A mother and father separately appeal the termination of the parental rights to their child.

## I.    BACKGROUND FACTS AND PROCEEDINGS

The child, J.T. is six years old and was born in 2007.  A court order removed J.T. from the mother's home on November 2, 2012.  The court based its order on the father's incarceration and the mother's failure to provide adequate supervision.  The court also found the mother's relationship with her boyfriend was volatile, which caused the home to be unsafe for the child.  Demonstrating the volatility of the relationship was an incident where the boyfriend broke the mother's car window and caused an injury to the child's leg.  Other issues were raised concerning the mother's past substance abuse, the poor condition of the family home, her lack of cooperation with services, and domestic violence.

A review hearing was held on November 13, 2012.  The court adjudicated J.T. a child in need of assistance (CINA) based on the parents' failure to provide adequate supervision.  Iowa Code § 232.2(6)(c)(2) (2013).  The court found the home provided by the mother to be unsanitary and unfit for a child.  The father remained incarcerated and could not provide any supervision.  In its reasoning, the court also cited the ongoing problems with domestic violence and substance abuse.

Dispositional review hearings were held on January 28, May 2, and August 22, 2013.  The court noted the mother's marginal improvement while the child remained in foster care with a younger sibling.  The court raised concerns

about the mother's finances and lack of stable housing. Prior to the August hearing, the mother had given birth to another child, and her participation in services dropped significantly.

A permanency hearing was held on October 31, 2013. The court ordered the permanency goal be changed from reunification to the termination of parental rights. The court found little improvement in the mother's ability to parent the child, the child seemed less bonded to the mother, the mother missed a significant number of scheduled visitations and, although the mother did not test positive for any controlled substances, concerns were raised about her possible alcohol abuse.

The termination of parental rights hearing was held on February 10, 26, 28 and April 3, 2014. The court found clear and convincing evidence to terminate the parental rights of both parents. In support of its decision to terminate, the court noted J.T. has been out of the care of the biological parents for the last twelve consecutive months, there have been no trial returns to the home, and the mother does not have a permanent residence. Additionally, the mother did not fully participate in visitations or show a willingness to respond to services to reunite with the child. The father is unable to take care of J.T., given the nature of his crime, as he cannot have contact with minor children.[1] The father has been in prison for most of J.T.'s life. The court noted the father has taken some steps to improve while living in a prison transition center. The court conditioned

---

[1] The father was convicted of sexual abuse third degree, sentenced to prison, and placed on the sex offender registry.

its praise by recognizing the father's lengthy criminal history did not inspire confidence he would respond to future services.

The court terminated the mother's parental rights pursuant to Iowa Code sections 232.116(1)(f), (g), 232.117, and the father's parental rights pursuant to sections 232.116(1)(e), (f), (g), and 232.117.

Both mother and father appeal.

## II.    STANDARD OF REVIEW

Our review of termination decisions is de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). We give weight to the juvenile court's findings, especially assessing witness credibility, although we are not bound by them. *In re D.W.*, 791 N.W.2d at 706. An order terminating parental rights will be upheld if there is clear and convincing evidence of grounds for termination under section 232.116. *Id.* Evidence is "clear and convincing" when there are no serious or substantial doubts as to the correctness of the conclusions of law drawn from the evidence. *Id.*

## III.    DISCUSSION

Iowa Code chapter 232 termination of parental rights follows a three-step analysis. *P.L.*, 778 N.W.2d at 39. The court must first determine whether a ground for termination under section 232.116(1) has been established. *Id.* If a ground for termination has been established, the court must apply the best-interest framework set out in section 232.116(2) to decide if the grounds for termination should result in termination of parental rights. *Id.* Finally, if the statutory best-interest framework supports termination of parental rights, the

court must consider if any of the statutory exceptions set out in section 232.116(3) weigh against the termination of parental rights. *Id.*

### A. Grounds for Termination

When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the order on any ground we find supported by the record. *D.W.*, 791 N.W.2d at 707. Iowa Code section 232.116(1)(f) provides termination may be ordered when there is clear and convincing evidence the child is four years of age or older, has been adjudicated a CINA, has been removed from the physical custody of the parent for at least twelve of the last eighteen months, and cannot be returned to the parent's custody at the time of the termination hearing.

Here, the parties do not contest the first three factors of section 232.116(1)(f) but challenge whether the fourth factor has been met. At the time of the termination proceeding, the father resided in a residential correctional facility and could not resume custody of J.T. The father claims the Department of Human Services (DHS) did not make reasonable efforts to return J.T. to his care as quickly as possible. He points to the fact DHS did not provide him with the opportunity to have supervised visits with J.T. However, the terms of the father's incarceration and supervision clearly prevent him from having contact with minors. We find the State has met its burden for the fourth factor of section 232.116(1)(f).

The mother also claims the State has not met its burden for the fourth factor of section 232.116(1)(f). In support of her claim, the mother blames the

government for taking away the federal and state assistance she used to support herself and her family. She claims her financial situation became worse when the child was removed as it caused some of her government assistance to stop and resulted in her homelessness. She claims DHS did not make reasonable efforts to return J.T. to her care. At the time of the termination hearing, the mother did not have stable housing and failed to attend visitation consistently. When she did attend, she struggled to parent J.T. Finally, the mother underwent a psychological evaluation in April 2012. As a result, DHS recommended the mother attend a program to address her mental health issues. The mother did not begin the program until February 2014, even though DHS followed up with the mother on four separate occasions. We find the State has met its burden for the fourth factor of section 232.116(1)(f).

As to both parents, DHS provided the family with reasonable services, and there is clear and convincing evidence the grounds for termination, pursuant to section 232.116(1)(f), have been met.

### B. Best Interests of the Child

Even if a statutory ground for termination is met, a decision to terminate must still be in the best interests of a child after a review of section 232.116(2). *P.L.*, 778 N.W.2d at 37. In determining the best interests of the child, we give primary consideration to "the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional conditions and needs of the child." *See* Iowa Code § 232.116(2).

For the reasons listed above, we find it is in the best interests of J.T. to terminate the parents' parental rights. We are also persuaded by the fact the same foster family is caring for J.T. and a younger sibling. Reports show the children are thriving in foster care, and appear more bonded to their foster family than to their biological parents. *See id.* § 232.116 (2)(b). We agree with the juvenile court's finding that it is in the child's best interests to terminate the parents' parental rights.

## IV. CONCLUSION

There is clear and convincing evidence that grounds for termination exist under section 232.116(1)(f), termination of the mother's and father's parental rights is in the child's best interests pursuant to section 232.116(2), and no consequential factor weighing against termination in section 232.116(3) requires a different conclusion. Accordingly, we affirm termination the parents' parental rights.

**AFFIRMED ON BOTH APPEALS.**